IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET MOLLOY )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ACERO CHARTER SCHOOLS, INC., an )<br>Illinois non-profit corporation, HEALTHPRO )<br>HERITAGE, LLC, a foreign corporation, )<br>WALLACE MANAGEMENT CORPORATION, )<br>a foreign corporation, and MELISSA SWEAZY, )<br>in her individual and official capacity, )<br>)<br>Defendants. ) | Case No.: |

## COMPLAINT

NOW COMES, Plaintiff, MARGARET MOLLOY, by and through her attorneys, Seth R. Halpern and Meredith W. Buckley of Malkinson & Halpern, P.C., and complains of Defendants, ACERO CHARTER SCHOOLS, INC., an Illinois non-profit corporation, HEALTHPRO HERITAGE, LLC, a foreign corporation, WALLACE MANAGEMENT CORPORATION, a foreign corporation and MELISSA SWEAZY, in her individual and official capacity, as follows:

### I.  Nature of the Case

1. Plaintiff, Margaret Molloy (hereinafter "Plaintiff" or "Molloy") was employed by Defendants HealthPro Heritage, LLC (hereinafter "HealthPro"), Wallace Management Corporation (hereinafter "Wallace") and/or Acero Charter Schools, Inc. (hereinafter "Acero") as a Reading Specialist at the Esmeralda Santiago Elementary School (hereinafter "Santiago School") in Chicago, Illinois.

2. For all times relevant during Plaintiff's employment, Defendant Melissa Sweazy (hereinafter "Sweazy") was the Principal of the Santiago School and Plaintiff's supervisor.

3. This is an individual action brought by Plaintiff against Defendants for violations of § 504 of the Rehabilitation Act, 29 U.S.C. §794, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, First Amendment Rights, Illinois Whistleblower Act, 740 ILCS 174 *et seq.*, and Illinois common law prohibiting retaliation for protected activity.

4. As a result of Defendants' unlawful conduct, MARGARET MOLLOY suffered lost wages and benefits and suffers and continues to suffer significant emotional distress. Plaintiff seeks all damages she is entitled to under law, including declaratory and injunctive relief, compensatory and punitive damages, reasonable attorneys' fees and costs and other appropriate legal and equitable relief.

## II. Jurisdiction and Venue

5. This Court has jurisdiction pursuant to § 504 of the Rehabilitation Act, 29 U.S.C. §794, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, 42 U.S.C. § 1983 and the First Amendment of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's Illinois Whistleblower Act and common law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because substantial parts of the events or omissions giving rise to the claims herein occurred in this judicial district and this is where Plaintiff suffered the primary harm from Defendant's actions.

## III.    Parties

7. Plaintiff is a citizen of the United States and presently and at all relevant times did reside and does currently still reside in Cook County, Illinois.

8. Defendant HealthPro Heritage, LLC is a foreign corporation with its Midwest headquarters in Middleburg Heights, Ohio, and, at all times relevant, was and continues to be registered and doing business in Chicago, Illinois.

9. Defendant Wallace Management Corporation is a foreign corporations with its headquarters in Middleburg Heights, Ohio, and, at all times relevant, was and continues to be registered and doing business in Chicago, Illinois.

10. Defendant HealthPro and Defendant Wallace are staffing agencies that place educational professionals in schools, including the Santiago School.

11. Defendant HealthPro and/or Defendant Wallace acted as an employer and made employment decisions regarding Plaintiff's employment at the Santiago School.

12. Defendant Acero is an Illinois non-for-profit corporation located at 209 W. Jackson Blvd., Suite 500, Chicago, Illinois. Acero operates certain public schools, including the Santiago School, to provide public educational services consistent with the public education requirements under State and Federal law, and pursuant to a charter with the Board of Education of the City of Chicago.

13. Defendant Acero acted as an employer and made employment decisions regarding Plaintiff's employment at the Santiago School.

14. Defendant Melissa Sweazy was the Principal of the Santiago School. At all times relevant hereto, Sweazy is, and was, an agent, servant and/or employee of Acero and upon information and belief, Sweazy possessed and was delegated final policymaking authority for personnel issues arising within the Santiago School.

15. At all times relevant Acero, as a public school, is a governmental body and as such, Acero and Sweazy, were acting under color of law pursuant to their authority and grants of power under the United States Constitution and the Constitution of the State of Illinois.

16. This action is brought by Plaintiff, individually, against Defendant HealthPro, Defendant Wallace, Defendant Acero and Defendant Sweazy.

## IV. General Allegations

17. On or about February 12, 2018, Defendant HealthPro and/or Defendant Wallace scheduled an interview between Plaintiff and the Special Education Director at Acero. On February 13, 2018, Defendant HealthPro and/or Defendant Wallace hired Plaintiff as a Full-Time Reading Specialist, informing Plaintiff that she was assigned to the Santiago School.

18. After completing various onboarding requirements for Defendant HealthPro, Defendant Wallace and for Defendant Acero, Plaintiff began work as a Reading Specialist at the Santiago School on or around March 5, 2018.

19. At all times relevant, Plaintiff performed her job duties reasonably and met Defendants' reasonable expectations.

20. At all times relevant, Defendant Acero received Federal and State funding and was required to comply with applicable Federal and State law related to the providing of public education and specifically special education.

21. Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1414 *et seq.;* 34 C.F.R. 300.300-311, and 23 Ill. Admin. Code 226.100-180, and related statutory and regulatory provisions, public educators, including the Santiago School, are required to identify students in need of special education, follow prescribed processes when diagnosing a

student with a specific learning disability, and once identified, provide those qualifying students with an Individual Education Plan or "IEP."

22. In accordance with 23 Ill. Admin. Code 226.110, 226.130 and 34 C.F.R. 300.304, and related statutory and regulatory provisions, the Illinois State Board of Education requires public schools, including the Santiago School, to follow "scientific, research-based interventions" when assessing, diagnosing and developing interventions for students suspected of having a specific learning disability. This intervention and diagnosis process is referred to as the Multi-Tiered System of Supports or commonly as "MTSS."

23. In accordance with MTSS, all students are identified and receive Tier 1, Tier 2 or Tier 3 instruction. Tier 1 is a general education program; Tier 2 is targeted intervention for students not making adequate progress in Tier 1; and Tier 3 is intensive, supplemental, individualized intervention for students not responding to Tier 2 instruction.

24. For a student to be determined eligible for an IEP based on a diagnosis of a specific learning disability, MTSS or other response to intervention data must be first collected.

25. Once the qualifying intervention data is collected, if a student is diagnosed with a specific learning disability, based upon said data, then the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and other related statutory and regulatory requirements, require that the student is entitled to an IEP.

26. At the time of Plaintiff's employment, in accordance with the aforementioned statutes, Defendant Acero required that MTSS was incorporated and followed when providing interventions for students identified as needing supplemental educational support ("Tier 3 students") and when qualifying a student for an IEP based on a diagnosis of a specific learning disability.

27. As a Reading Specialist, Resource Service Provider and member of the Santiago School's IEP team, Plaintiff was and remains knowledgeable of the requirements of implementing and following MTSS, the requirements for determining eligibility for an IEP based on a diagnosis of a specific learning disability and implementing an IEP.

28. Within a few days of her employment at the Santiago School, Plaintiff reviewed the available data that identified students in need of Tier 2 and Tier 3 interventions pursuant to MTSS and then sent MTSS proposals to Defendant Sweazy and Acero's Special Education Director.

29. Plaintiff discussed with various teachers and administrators, including but not limited to Santiago School Principal Melissa Sweazy and teacher Elizabeth Kruger, that a number of students were reading below grade level based on the available data and, thus, should receive appropriate MTSS interventions and instruction. In response, Plaintiff was told that these students did not need interventions and that the students were reading at grade level, which was inconsistent with the available data and inapposite to the requirements under MTSS. Plaintiff immediately began to voice her concerns that she was being restricted from providing interventions and assessments required under MTSS and under applicable state and federal law, and thus, that the school was violating the law.

30. Pursuant to MTSS, Tier 3 interventions require Plaintiff to provide explicit, targeted educational supports that are done with an increased frequency, intensity and duration. Effective Tier 3 interventions typically require Plaintiff to "pull out" students from their general education classroom to provide the requisite Tier 3 targeted intervention and education support. Plaintiff provided such "pull out" Tier 3 interventions for kindergarten through sixth grade students at the Santiago School.

31. When Plaintiff requested certain 7th and 8th grade Tier 3 students be "pulled out" for interventions, teacher Elizabeth Kruger and Principal Sweazy refused and insisted Plaintiff do co-teaching interventions. Co-teaching intervention would keep the Tier 3 students in large groups depriving them of receiving proper, individualized and intensive interventions required under MTSS. Based on her training and experience as a special education provider, Plaintiff believed this was not proper Tier 3 intervention and, thus, violated MTSS requirements and applicable federal and Illinois law.

32. Plaintiff then provided Principal Sweazy and Santiago Instructional Coach Kate Cauhorn with data on the 7th and 8th grade students which supported that many were reading significantly below grade level and, therefore, necessitating Tier 3 targeted inventions and educational support. Despite this data, Principal Sweazy still refused to allow Plaintiff to perform Tier 3 interventions and required Plaintiff to "co-teach" with Elizabeth Kruger, in violation of the law.

33. Plaintiff voiced her concerns that she was being restricted from providing Tier 3 interventions to various teachers and administrators including but not limited to Santiago School Principal Melissa Sweazy, Santiago Case Manager and Resource Teacher Amanda Haas and Santiago Instructional Coach Kate Cauhorn. All of Plaintiff complaints were met with animosity and were dismissed without any action taken to correct the violations.

34. Additionally, Plaintiff reported to Caroline Morrison, her supervisor at HealthPro and/or Wallace, that in violation of the aforementioned statutes, she was being restricted from providing required special education interventions and that she was very uncomfortable with the educational practices at the Santiago School, as she believed they were in violation of the law. In response to her reports, Plaintiff was told by Carolina Morrison at HealthPro and/or Wallace

to follow the instruction of the Santiago School administrators and that Defendant HealthPro and/or Wallace could not take any remedial action.

35. Following Plaintiff's initial complaints regarding Tier 3 interventions and the Santiago School's established special education practices, Plaintiff met with Santiago teachers, Ms. Kruger and Ms. Cauhorn. Plaintiff was again told that, for 7th and 8th grade Tier 3 students, Plaintiff must do "push-in" co-teaching interventions and that she was prohibited from doing "pull-out" interventions. Plaintiff believed this to be an unlawful violation of MTSS and on or about April 6, 2018, Plaintiff informed Case Manager and Resource Teacher Rebecca Gasser and Santiago Case Manager and Resource Teacher Amanda Haas that she refused to do the Tier 3 interventions in the manner set forth by the administration at the Santiago School as they would be in contravention of the law.

36. After her refusal to participate in what she believed in good faith to be unlawful education practices, Plaintiff then again asked Defendant Melissa Sweazy for permission to provide the requisite Tier 3 interventions. Defendant Sweazy again refused Plaintiff's request. During this time, Plaintiff also met with Santiago Case Manager and Resource Teacher Amanda Haas and again showed her the data which identified numerous 7th and 8th grade students that were reading below grade level and required interventions.

37. Plaintiff additionally contacted Bridgette Sprovieri, Acero's Section 504/Title II Coordinator, regarding her concerns about the violations in the special education practices that were in place and mandated by the administration at the Santiago School. Bridgette Sprovieri summarily dismissed Plaintiff's complaints, telling her to contact Defendant Sweazy.

38. After Plaintiff complained about the Santiago School's lack of compliance with MTSS, the School's failure to comply with legally mandated special education requirements and

after Plaintiff refused to participate in educational activities which she believed in good faith violated the law, Plaintiff was subjected to retaliatory behavior by Defendant Sweazy, as well as Santiago administrators and teachers, which included but was not limited to:

    a.    being told she was "unprofessional";

    b.    being subjected to verbal discipline for using the word "illegal";

    c.    being excluded from meetings;

    d.    being placed under additional scrutiny regarding her schedule and work hours;

    e.    being told to not voice her concerns about educational practices; and

    f.    being subjected to demeaning comments and behaviors.

39. Beginning in early April 2018, Plaintiff was excluded from students' IEP domain and eligibility meetings, despite the fact that Plaintiff, as an MTSS Interventionist and Reading Specialist, would typically be included in such meetings.

40. On or about April 11, 2018, there was a particular IEP eligibility meeting for a student. Plaintiff was not invited to such meeting. Nevertheless, Plaintiff independently became aware that the IEP meeting was being held and Plaintiff joined. When Plaintiff arrived unexpectedly at this IEP meeting, she was asked whether she was going to stay and participate. Plaintiff confirmed that as the Reading Specialist she would stay, attend the meeting and participate.

41. During this April 11, 2018, IEP Eligibility meeting, Santiago School teachers and Acero administrators attempted to diagnose this student with a specific learning disability and provide an IEP. During this IEP eligibility meeting, Plaintiff reported that the student did not meet the legally required criteria for a specific learning disability and was not legally eligible for an IEP. Acero teachers and administrators expressed disapproval of Plaintiff's participation in

9

the meeting and Plaintiff's insistence that the legally mandated IEP eligibility requirements be followed.

42. Plaintiff was additionally denied an opportunity to complete required eligibility determination documentation during this IEP eligibility meeting on April 11, 2018.

43. On April 13, 2018 Defendants terminated Plaintiff's employment in retaliation for Plaintiff's refusal to participate in educational activities which she believed were unlawful and her reports of such unlawful educational activities.

## COUNT I
## § 504 of the Rehabilitation Act – Retaliation
## (Defendant Acero)

44. Plaintiff repeats and re-alleges paragraphs 1-43 above, as paragraph 1-43 of Count I, as if fully set forth herein.

45. Defendant Acero receives federal funding and assistance.

46. § 504 of the Rehabilitation Act prohibits any entity receiving federal financial assistance from retaliating against any individual because they have opposed any act or practice that is made unlawful under its provisions and the incorporated provisions of the Americans with Disabilities Act, 42 U.S.C. § 12203.

47. As set forth herein, Plaintiff engaged in statutorily protected activity by reporting that special education students were not receiving mandated interventions and assessments, by refusing to participate in education practices which Plaintiff believed in good faith were unlawful and by advocating that legally mandated criteria be met when diagnosing students with specific learning disabilities.

48. In violation of § 504 of the Rehabilitation Act, Defendant Acero, by and through its agents and employees, retaliated against Plaintiff for her statutorily protected activities set

forth herein by subjecting her to adverse employment actions which include but are not limited to subjecting Plaintiff to harsher and more negative terms and conditions of employment, discipline and termination.

49. As a direct and proximate result of Defendant Acero's retaliatory actions, Plaintiff has sustained damages including lost income and employee benefits, lost future income and employment benefits and significant emotional distress.

WHEREFORE, Plaintiff MARGARET MOLLOY, respectfully prays that this Court enter an Order:

> (a) declaring the conduct of Defendant Acero and their agents/employees, as described herein, to be in violation of § 504 of the Rehabilitation Act;
>
> (b) awarding Plaintiff compensatory damages, lost wage damages and damages for emotional distress;
>
> (c) awarding Plaintiff reasonable attorneys' fees and costs; and
>
> (d) any other relief this Court deems just and warranted.

## COUNT II
### Title II of the Americans with Disabilities Act – Retaliation
### (Defendant Acero)

50. Plaintiff repeats and re-alleges paragraphs 1-43 above, as paragraph 50 of Count II, as if fully set forth herein.

51. As set forth herein, Plaintiff engaged in activities opposing Defendant Acero's special education policies that she believed in good faith violated the protections under Title II of the Americans with Disability Act ("ADA").

52. In violation of the anti-retaliation provisions of the ADA, Defendant Acero retaliated against Plaintiff for her statutorily protected activities set forth herein by subjecting her

11

to adverse employment actions which include but are not limited to subjecting Plaintiff to harsher and more negative terms and conditions of employment, discipline and termination.

53.     As a direct and proximate result of Defendant Acero's retaliatory actions, Plaintiff has sustained damages including lost income and employee benefits, lost future income and employment benefits and significant emotional distress.

WHEREFORE, Plaintiff MARGARET MOLLOY, respectfully prays that this Court enter an Order:

> (a) declaring the conduct of Defendant Acero and their agents/employees, as described herein, to be in violation of Title II of the ADA;
>
> (b) awarding Plaintiff compensatory damages, lost wage damages and damages for emotional distress;
>
> (c) awarding Plaintiff reasonable attorneys' fees and costs; and
>
> (d) any other relief this Court deems just and warranted.

## COUNT III
### Deprivation of First Amendment Rights to Freedom of Speech under 42 U.S.C. § 1983
### (Defendant Acero and Defendant Sweazy)

54.     Plaintiff repeats and re-alleges paragraphs 1-43 above as paragraph 54 of Count III, as if fully set forth herein.

55.     Prior to her termination, Plaintiff engaged in speech that was related to Defendant Acero's special education practices and policies and unlawful violations thereof. Plaintiff's statements and reports about the status of disabled students, special education students and general population students were protected under federal laws regarding public education and public special education, and as such, this speech is protected under of the First Amendment of the U.S. Constitution.


56. At all times relevant, supervisory agents and employees of Defendant Acero, including but not limited to Defendant Sweazy, as a matter of custom and practice, possessed and exercised final policy making authority to discharge Acero employees, and acted under color of law in exercising such authority to terminate Plaintiff's employment in retaliation for Plaintiff engaging in protected speech and speech conduct.

57. Plaintiff's protected speech was a substantial or motivating factor for Defendants' wrongful and retaliatory termination of Plaintiff's employment.

58. Defendants Acero, by and through its supervisory agents, including but not limited to Defendant Sweazy, acted intentionally, with reckless disregard and/or maliciously under color of law to deprive Plaintiff of her rights guaranteed under the First Amendment of the United States Constitution and retaliated against Plaintiff for exercising such rights.

59. The acts perpetrated by Defendants were done in furtherance of their policy to intimidate, penalize or retaliate against those who exercised their rights in a manner disapproved of by Defendant Acero's supervisory agents and employees, including but not limited to Defendant Sweazy.

60. Defendant Acero ratified the conduct of Sweazy by retaliating against Plaintiff, and terminating Plaintiff's employment.

61. As a direct and proximate result thereof, Plaintiff has sustained damages including lost income and employee benefits, lost future income and employment benefits and significant emotional distress.

WHEREFORE, Plaintiff MARGARET MOLLOY, respectfully prays that this Court enter an Order:

> (a) declaring the conduct of Defendants Acero and Sweazy and their agents/employees, as described herein, to be in violation of 42 U.S.C. §

1983 and the protections granted by the First Amendment of the U.S. Constitution;

(b) awarding Plaintiff compensatory damages, lost wage damages and damages for emotional distress;

(c) awarding Plaintiff punitive damages;

(d) awarding Plaintiff reasonable attorneys' fees and costs; and

(e) any other relief this Court deems just and warranted.

## COUNT IV
### Illinois Whistleblower Act – 740 ILCS 174/1 *et seq.*
**(Defendant HealthPro, Defendant Wallace, Defendant Acero and Defendant Sweazy)**

62. Plaintiff repeats and re-alleges paragraphs 1-43 above, as paragraph 62 of Count IV, as if fully set forth herein.

63. Plaintiff was an employee as defined by the Illinois Whistleblower Act, 740 ILCS 174/5.

64. Defendants HealthPro, Wallace, Acero and Sweazy are employers as defined by the Illinois Whistleblower Act, 740 ILCS 174/5.

65. As alleged herein, Plaintiff refused to engage in activity for which she had a good faith belief was in violation of the law and Plaintiff reported to Acero employees information which she believed disclosed violations of law.

66. Plaintiff's refusals included, but were not limited to, when Plaintiff refused to provide special education interventions and assessment that did not meet regulatory and statutory requirements; when Plaintiff refused to be excluded from IEP domain and eligibility meetings and when Plaintiff refused to allow a student to be diagnosed with a specific learning disability when that student did not meet the legally required criteria for such diagnosis.

67. In violation of the Illinois Whistleblower Act, 740 ILCS 174/20, Defendants retaliated against Plaintiff for her refusals to participate in activities for which she believed in good faith would result in violations of State of Federal laws, rules or regulations by subjecting her to more negative terms and conditions of employment, discipline and termination.

68. Additionally, in violation of the Illinois Whistleblower Act, 740 ILCS 174/15, Defendant retaliated against Plaintiff for disclosing to Acero employees information about what she believed in good faith related to violations of State or Federal laws, rules and/or regulations, by subjecting her to more negative terms and conditions of employment, discipline and termination.

69. As a direct and proximate result thereof, Plaintiff has sustained damages including lost income and employee benefits, lost future income and employment benefits and significant emotional distress.

WHEREFORE, Plaintiff MARGARET MOLLOY, respectfully prays that this Court enter an Order:

(a) declaring the conduct of Defendants HealthPro, Wallace, Acero and Sweazy and their agents/employees, as described herein, to be in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*;

(b) awarding Plaintiff compensatory damages, lost wage damages and damages for emotional distress;

(c) awarding Plaintiff punitive damages;

(d) awarding Plaintiff reasonable attorneys' fees and costs; and

(e) any other relief this Court deems just and warranted.

**COUNT V**
**Illinois common law retaliation**
**(Defendant HealthPro, Defendant Wallace and Defendant Acero)**

70. Plaintiff repeats and re-alleges paragraphs 1-43 above, as paragraph 70 of Count V, as if fully set forth herein.

71. As set forth herein, during her employment at the Santiago School, Plaintiff reported to Defendant Acero and to Defendant HealthPro and Defendant Wallace the special education practices which she believed violated Illinois law, rules or regulations and Plaintiff refused to engage in those activities which she believed were so unlawful.

72. The State of Illinois has a clearly mandated public policy that schools receiving state funding and providing public education to students within the State, should comply with Illinois' statutory and regulatory provisions related to special education, including but not limited to 23 Ill. Admin. Code 226.110 and 226.130.

73. The State of Illinois prohibits any employer from engaging in retaliatory conduct against an employee because that employee reported and/or refused participate in the employer's alleged conduct that violated Illinois' statutory and regulatory provisions.

74. Defendants Acero, HealthPro and Wallace violated clearly mandated public policy of the State of Illinois when it/they terminated Plaintiff because she refused to engage in conduct that, in good faith, Plaintiff believed to be in violation of Illinois statutory and regulatory requirements related to special education and for reporting such misconduct to Defendant Sweazy and other administrators within Acero.

75. As a direct and proximate result thereof, Plaintiff has sustained damages including lost income and employee benefits, lost future income and employment benefits and significant emotional distress.

WHEREFORE, Plaintiff MARGARET MOLLOY, respectfully prays that this Court enter an Order:

(a) declaring the conduct of Defendants HealthPro Wallace and Acero and their agents/employees, as described herein, to be in violation of the Illinois law;

(b) awarding Plaintiff compensatory damages, lost wage damages and damages for emotional distress;

(c) awarding Plaintiff punitive damages; and

(d) any other relief this Court deems just and warranted.

**PLAINTIFF DEMANDS A JURY TRIAL.**

**DATED: February 7, 2019**

        Respectfully Submitted,

        s/Meredith W. Buckley
        Meredith W. Buckley

Seth R. Halpern
Meredith W. Buckley
MALKINSON & HALPERN, P.C.
33 N. Dearborn Street, Suite 1540
Chicago, Illinois 60602
(312) 427-9600
shalpern@mhtriallaw.com
mbuckley@mhtriallaw.com