**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| MARGARET MOLLOY )<br>    Plaintiff, )<br>        v. )<br>           )<br>ACERO CHARTER SCHOOLS, INC., *et al.* )<br>    Defendants. ) | Case No.: 2019-cv-00785<br><br>Judge: Gary Feinerman |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS ACERO CHARTER SCHOOLS, INC. and MELISSA SWEAZY'S MOTION TO DISMISS**

NOW COMES, Plaintiff, MARGARET MOLLOY, ("Plaintiff"), by and through her attorney, Meredith W. Buckley of Malkinson & Halpern, P.C., and in opposition to Defendants Acero Charter Schools, Inc and Melissa Sweazy's Motion to Dismiss, states as follows:

### I. Introduction

Plaintiff, Margaret Molloy, was formerly employed as a Reading Specialist/Special Education teacher at the Santiago School, a public elementary school operated by Acero Charter Schools, Inc ("Acero"). Defendant, Melissa Sweazy, was the principal at the Santiago School.

Plaintiff has alleged unlawful retaliation by Defendant, Acero, in violation of § 504 of the Rehabilitation Act (Count I), in violation of Title II of the Americans with Disabilities Act ("ADA")(Count II) and in violation of state law pursuant to the Illinois Whistleblower Act ("IWA")(Count IV) and common law (Count V). Plaintiff has also alleged a deprivation of her First Amendment Rights under 42 U.S.C. § 1983 against both Defendants (Count III). As Plaintiff has properly alleged her claims, Defendants' Motion to Dismiss should be denied.

### II. Standard of Review

A Motion to Dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Complaint, not the merits of the case. *Smith v. Rosebud Farmstand,* 90 F. Supp. 1001, 1003 (N.D. Ill. 2012). In

reviewing the sufficiency of a complaint, the court's role is not to consider how likely the plaintiff is to succeed but simply whether they are entitled to offer evidence to support their claims. *Gomez v. Ill. Dept. of Human Servs.* 2006 WL 2560847 (N.D. Ill. 2006). Courts must also construe the complaint in the light most favorable to the plaintiffs, accepting as true all well pled facts and drawing all possible inferences in their favor. *McCormick,* 230 F.3d at 323. At this stage of litigation, plaintiffs need only plead sufficiently to give defendants fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002).

### IV. Argument

**A. Plaintiff's Claims Against Sweazy in Her Official and Individual Capacity**

To establish liability against Defendant Sweazy in her official capacity under § 1983, Plaintiff must frame her claim under the well-established standard set forth in *Monell*. *See Pikul v. Dart,* 2014 WL 287536, *2 (N.D. Ill. 2014) (discussing the difference between official and individual liability under § 1983). To state a claim against Defendant Sweazy in her individual capacity under § 1983, Plaintiff must show personal involvement by Sweazy in the alleged constitutional violation. *Id.* As courts hold different standards for finding official and individual liability under Section 1983, Plaintiff disputes that the claims are redundant.

**B. Counts I and II alleging retaliation under the Section 504 of the Rehabilitation Act and Title II of the ADA have been properly pled**

**1. Plaintiff has standing for her §504 and Title II retaliation claims**

Defendants are incorrect when they state that Plaintiff lacks standing to bring a retaliation claim under § 504 of the Rehabilitation Act. Section 504 prohibits retaliation against individuals who are advocating for special education students. *Blazquez v. Bd. of Educ. of the City of Chicago,* 2006 WL 3320538 (N.D. Ill. 2006). In *Blazquez,* the plaintiff, a special education

2

teacher, alleged that her administrators were engaged in private business activities that took away from the proper instruction of special education students. *Id.* at *2. The plaintiff complained about the administrators' actions and alleged that she was then retaliated against for such complaints in violation of § 504 of the Rehabilitation Act. *Id.* Just as the Defendants are attempting here, the *Blazquez* defendants filed a motion to dismiss arguing that the plaintiff did not have standing to bring a retaliation claim under § 504. The Court held that the plaintiff did have standing under § 504 and denied the defendants' motion to dismiss. The Court stated:

> "Section 504 of the Rehabilitation Act, at 29 U.S.C. § 7949(d), expressly incorporates the anti-retaliation provisions of Section 503 of the ADA, 42 U.S.C. § 12203. That provision prohibits retaliation against '*any individual* because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter.'

*Id.* at *5 (emphasis as cited)

Similarly, Title II of the ADA permits Plaintiff's retaliation claims. *See Hamerski v. Belleville Area Special Serv. Coop.*, 2017 WL 3923336 (S.D. Ill. 2017). The ADA retaliation provision "protects *any* individual who 'has opposed an act or practice made unlawful by the ADA or has made a charge under the ADA.'" *Id.* at 11. Further, it is unlawful to "coerce, intimidate, or interfere with any individual on account of his or her having *aided or encouraged any other individual* in the exercise or enjoyment of any right granted or protected by the ADA." *Id.* (emphasis as cited). In *Hamerski,* like here, the plaintiff was a special education teacher who alleged she was terminated in retaliation for advocating for students under the ADA and Individual with Disabilities Act (IDEA). *Id.* at 12. The court found the plaintiff had properly alleged a retaliation claim under Title II of the ADA, even though the plaintiff herself was not disabled, as Plaintiff here. Existing law is clear; Plaintiff has standing for her retaliation claims.

    **2.    Plaintiff has sufficiently alleged statutorily protected expression**

3

To state a prima facie claim for retaliation under both § 504 and Title II of the ADA, the Plaintiff must establish that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action and (3) there is a causal link between the protected expression and the adverse action. *Hamerski,* 2017 WL 3923336, *11; *Blazquez*, 2006 WL 3320538, *5. Defendants contend that Plaintiff has failed to allege that she engaged in statutorily protected activity. This is incorrect as Plaintiff alleged that she complained and advocated for students' rights to special education interventions and diagnostics and such advocacy and complaints are statutorily protected acts. *See* Hamerski, 2017 WL 3923336, *11-12; Blazquez, 2006 WL 3320538, *5-6.

As set out in the Complaint, IDEA, 20 U.S.C. § 1414 *et seq.,* requires that the Santiago School identify students in need of special education, follow prescribed process when diagnosing a student with a specific learning disability and provide qualifying students with an Individual Education Plan or "IEP." Cmplt. ¶ 21. In complying with IDEA, and in accordance with 23 Ill. Admin. Code 226.100; 226.130 and 34 C.F.R. 300.304, the Illinois State Board of Education ("ISBE") requires public schools, including the Santiago School, to follow a specific intervention and diagnosis process referred to as Multi-Tiered System of Supports or "MTSS." Cmplt. ¶ 22. Plaintiff alleges that she was prohibited from providing these requisite interventions and diagnostic processes to students at the Santiago School and that she complained about such prohibitions. Cmplt. ¶ 29-32; 35-36. Complaining about "a failure to adequately support learning disabled students" is a statutorily protected activity. *See Blazquez,* at *4.

In arguing that Plaintiff has not engaged in statutorily protected activity, Defendants claim that Plaintiff did not allege any specific students to whom Plaintiff was

restricted from providing MTSS interventions or whether the students were in fact disabled as defined by Title II and/or § 504. Defendants' logic is flawed.

Plaintiff is required only to plead sufficient facts to put Defendants on notice of the nature of her claims. *Swierkiewicz,* 534 U.S. at 510. Plaintiff has identified the teachers and the groups of students for which she was restricted from providing MTSS interventions and diagnostics and the date of the IEP Eligibility meeting in which Plaintiff refused to deviate from legally mandated IEP eligibility criteria. *See* Cmplt.¶ 31; 35-36; 41. Under the applicable pleading standards, these facts are sufficient to put Defendants on notice about her claims and the facts upon which her claims rest.

Regarding the argument that Plaintiff has not identified whether the students were disabled, Defendants have illogically put the cart before the horse. It is not known if these students are disabled as defined by Title II and/or § 504, because Defendants prohibited Plaintiff from providing the legally mandated interventions and diagnostics required to evaluate students *suspected* of having a disability. Plaintiff identified students that were reading significantly below grade level. Cmplt. ¶ 29. Under the legally mandated framework, adopted by the ISBE, and in accordance with the IDEA, 23 Ill. Admin. Code 226.100; 226.130 and 34 C.F.R. 300.304, these students were required to receive interventions to determine if these students were in fact disabled and thus entitled to an IEP. As alleged, students did not receive the requisite interventions and diagnostics, thereby making it impossible to know if the students were in fact disabled.

Prohibiting mandated interventions and, thus, effectively prohibiting a diagnosis of a disability, does not immunize the Defendants from liability under Title II or § 504. This would be illogical. A disabled student is equally entitled to the legally mandated

diagnosis process as they are entitled to the legally mandated IEP once diagnosed with a learning disability. The retaliation prohibitions under Title II and § 504 are broad and would encompass retaliation for advocating for students to receive the mandated interventions and diagnostics to determine *if* they were disabled under such laws.

Importantly, for a retaliation claim, a plaintiff must only allege that she reasonably *believed* that actions about which she was complaining were contrary to law, not that the actions were in fact in violation of law. *Blazquez,* at *5. As set forth above, the facts alleged set forth that the Defendants were violating the law when they restricted Plaintiff from providing MTSS interventions and when Defendants disregarded IEP eligibility requirements. However, the actual illegality of Defendants' actions is not dispositive. Assuming *arguendo* that the manner in which Acero provided educational interventions did not violate the law, Plaintiff's retaliation claims are still legally sufficient. *See Alexander v. Gerhardt Enterp. Inc.*, 40 F.3d 187, 195-96 (7th Cir. 1994)(the conduct a plaintiff opposes need not actually violate Title VII; rather, the test is whether she reasonably believed in good faith that the practices she opposed violated Title VII; *See also, Blazquez,* at *5 (adopting Title VII retaliation standards for retaliation actions under the Rehabilitation Act).

For these reasons, Plaintiff's claim under §504 and Title II of the ADA as stated in Counts I and II is sufficiently alleged and these claims should proceed to discovery.

**C.     Plaintiff's First Amendment Claims are Sufficiently Plead**

    **1.     As alleged, Plaintiff's speech was constitutionally protected**

As a general rule, the government cannot retaliate against its employees for engaging in constitutionally protected speech. *Hutchins v. Clarke,* 661 F.3d 947, 955

(7th Cir. 2011). An employee engages in constitutionally protected speech when she reports misconduct outside established channels or reports something for which she did not have any formal responsibilities. *See Logan v. City of Chicago,* 2018 WL 5279304, *4 (N.D. Ill. 2018). Defendants have cited to no formal reporting responsibilities or whether Plaintiff's complaints were within established channels for her position. This is a factual issue that should be determined during discovery.

Plaintiff's claim is essentially that she "blew the whistle" about policies and practices that were in place at the Santiago School related to special education. Blowing the whistle on matters of public concern are constitutionally protected as illustrated in *Spiegla.* In *Spiegla,* a plaintiff prison guard attempted to search a state-owned vehicle as it entered the prison grounds. *Speigla v. Hull,* 371 F.3d 928, 933 (7th Cir. 2004). The plaintiff was told there was a new policy exempting state vehicles from search. *Id.* Knowing that state vehicles could be used to bring weapons or contraband into the prison, plaintiff complained about the policy to his superiors. *Id.* at 934. Plaintiff then brought a § 1983 claim alleging retaliation for protected speech under the First Amendment. *Id.* In reversing the district court, the Seventh Circuit looked at the content and context of the employee's speech noting that the plaintiff's speech was not an internal grievance about internal office affairs or a complaint made about ordinary office policy made through the chain of command; rather the plaintiff's complaint was an attempt to bring critical attention to a policy that had the potential to compromise prison security which was a matter of public concern. *Id.* at 936. The Seventh Circuit noted that the press had recently reported about contraband trafficking and official corruption at the prison, evidencing that the matter was of public concern. *Id.* Here, Plaintiff's complaints

were not mere complaints about school procedure but were substantive complaints that students at the Santiago School were not being provided with special education interventions and diagnostics that were mandated by state and federal law. There are few matters that receive more attention from the press than public education in Chicago and, as such, it is hard to argue that public education is not a matter of public concern. As held in *Speigla,* regardless of whether her complaints were to her superiors, given the content and context of her speech, Plaintiff is entitled to First Amendment protection.

### 2. Plaintiff has alleged sufficient facts for a *Monell* claim

To establish municipal liability under §1983, a plaintiff can show "(1)an express policy causing the loss, (2) a widespread practice constituting custom or usage that caused the loss or (3) causation by a person with final policy making authority." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). Under the U.S. Supreme Court's rulings in *Leatherman,* district courts may not impose a heightened pleading requirement on plaintiffs asserting *Monell* claims, as plaintiffs are entitled to discovery regarding the municipality's policies, customs and related causation. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *See also Hammond v. Town of Cicero,* 822 F. Supp. 512 (N.D. Ill. 1993). The issue of whether the Defendants have a widespread policy, custom or practice and whether the actions were committed by a final policymaker is better resolved at summary judgment, when all the evidence has been presented. *Young v. City of Chicago,* 2011 WL 1527274, *2 (N.D. Ill. 2011). At this stage, Plaintiff has alleged the required elements of a *Monell* claim.

### a. Defendants misstate what is required for a *Monell* claim at this stage

Plaintiff's allegations state that the Defendants engaged in a policy and practice of intimidation, penalizing and retaliation against those who engaged in constitutionally protected

speech. *See* Cmplt. ¶ 59. Defendants incorrectly claim that because Plaintiff is relying on a "sole instance of wrongdoing that Plaintiff experienced," she cannot proceed on her *Monell* claim.

There is not a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago,* 829 F.3d 837, 844 (7th Cir. 2016). This means that the plaintiff need not identify other examples of the complained of practice in order to state a *Monell* claim; rather, a plaintiff may rely solely on her experience. *Munn v. City of Aurora,* 2018 WL 1124424, *5 (N.D. Ill. 2018). Post *White,* courts analyzing *Monell* claims have "scotched motions to dismiss" premised on arguments that the complaint does not contain allegations beyond that relating to the plaintiff, as done here. *Id.* A plaintiff need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists. *Id.* Plaintiff has sufficiently alleged a pattern and practice for a *Monell* claim.

> **b. Plaintiff has sufficiently alleged her constitutional injury was caused by an individual with final policymaking authority**

The facts alleged are sufficient to establish that Defendant, Sweazy, had been delegated with final policymaking authority to satisfy *Monell* requirements. Defendants ignore the fact that final policymaking authority may be granted directly by statute <u>or</u> delegated or ratified by an official having policymaking authority. *See Kujawski v. Bd. of Com'rs of Bartholomew Cnty,* 183 F.3d 734, 739 (7th Cir. 1999) (reversing summary judgment when plaintiff presented facts that Chief Probation Officer was "in charge of" and set employment policies for the department). From the allegations, it is clear that Defendant Sweazy was "in charge of" and set employment policies at the Santiago School.

As alleged, Defendant Sweazy repeatedly prohibited Plaintiff from providing the requisite MTSS interventions. Cmplt. ¶¶ 32, 36. When Plaintiff complained about Defendant Sweazy's policy and practice of prohibiting MTSS interventions to Acero's § 504/Title II

Coordinator, Plaintiff's complaints were dismissed and Plaintiff was told to defer to Sweazy. Cmplt. ¶ 37. When Plaintiff complained to Defendant HealthPRO, she was told that HealthPRO could not do anything as Plaintiff was required to defer to Sweazy. Cmplt. ¶ 34. Additionally, Plaintiff alleged that Sweazy subjected her to retaliatory behavior in response to Plaintiff's complaints and refusals to participate in what she believed to be violations of the law. Cmplt. ¶ 38. At this stage of litigation, Plaintiff has sufficiently alleged that Defendant Sweazy has been delegated final policymaking authority.

   **3. Defendant Sweazy is not entitled to qualified immunity**

Qualified immunity shields from liability defendants who act in ways they reasonably believe to be lawful. *Ewell v. Toney,* 853 F.3d 911, 919 (7th Cir. 2017). To refute a claim of qualified immunity raised by a defendant, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that the right was clearly established as the time so that it would have been clear to a reasonable person that their conduct was unlawful in the situation. *Id.*

First, Plaintiff has established that a constitutional claim exists under the First Amendment as Plaintiff's speech was not made as part of her official duties but as a whistleblower speaking on matters of public concern. Second, Contrary to Defendants' argument, it is well-established that public employees are entitled to First Amendment protections when speaking of matters of public concern. *See Garcetti v. Ceballos,* 547 U.S. 410 (2006); *Valentino v. Vill. of S. Chicago Hghts.* 575 F.3d 664 (7th Cir. 2009); *Kristofek v. Vill. of Orland Hills,* 832 F.3d 785 (7th Cir. 2016); *Speigla,* 371 F.3d 928, (7th Cir. 2004).

As both elements to refute a claim of qualified immunity exist, Defendant Sweazy is not entitled to immunity for her acts.

**D. Plaintiff has Sufficiently Stated a Valid Claim Under the Illinois Whistleblower Act**

10

Defendants' arguments that Plaintiff did not state a valid cause of action under Sections 15(b) and 20 of the Illinois Whistleblower Act ("IWA") are both legally incorrect and specious.

### 1. Plaintiff disclosed alleged violations to a governmental agency under 15(b)

In order to state a valid cause of action under Section 15(b) of the Act, a plaintiff has to allege that (1) an adverse employment action was taken by her employer, (2) which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation. *Sweeney v. City of Decatur*, 79 N.E.3d 184, 188 (Ill. App. 4th. 2017). Defendants' incorrectly argue that Plaintiff has not adequately disclosed the alleged violation to a governmental agency because Acero is a governmental agency.

Acero is an authorized charter school under the Illinois Charter School Law. Therefore, it is a "public school" and, accordingly, is recognized as a "governmental body." 105 ILCS 5/27A-1 *et seq; Jones v. SABIS Educ. Syst. Inc.,* 52 F.Supp.2d 868 (N.D. Ill. 1999). To qualify as a governmental agency under the IWA, the entity must perform a governmental function. *Weller v. Paramedic Srvc. of Ill.* 297 F.Supp.3d 836, 348 (N.D. Ill. 2018). Public education "fulfills a most fundamental obligation of government to its constituency" and as such, a public school performs a clear governmental function. *Ambach v. Norwick,* 441 U.S. 68, 75 (1979). Accordingly, by statute and by the nature of the governmental functions it provides, Acero is governmental agency for the purposes of the IWA. *See Weller,* 297 F.Supp.3d at 548. Importantly, under the IWA, it is not disqualifying if the governmental agency is the employee's employer. *Brame v. City of N. Chicago*, 955 N.E.2d 1269, 1271-72 (Ill. App. Ct. 2011).

Defendants' reliance on *Sweeny* is misplaced. In *Sweeny* a police chief told his boss, the city manager, that it was improper to use a police vehicle for personal use. *Sweeny,* 79 N.E.3d at

186. The chief was then fired and brought a claim under the IWA. *Id.* The court held that the police chief's report was not a disclosure under the IWA because he reported the wrongdoing only to the alleged wrongdoer, his boss, and therefore there was "no exposure" of the wrongdoing. *Id.* at 189. This is not what the Plaintiff has alleged here as Plaintiff alleged she made numerous complaints to various Acero employees, including the §504/Title II Coordinator, not just the wrongdoer, Sweazy. Cmplt. ¶ 37.

The facts here are more analogous to *Brame.* In *Brame,* a police officer reported criminal wrongdoing by the police chief to the town's mayor. *Brame,* 955 N.E.2d at 1270. The court in *Brame* found that the police officer did make a valid disclosure under the IWA. *Id.* at 1274. Underlying the difference from *Sweeny,* the court noted that in *Brame* the police officer *exposed* the wrongdoing to persons other than the alleged wrongdoer. *Id.* Here, the Plaintiff did not just complain to Defendant, Sweazy. Instead, she made a concerted effort to report the wrongdoings to multiple Acero employees, including the §504/Title II Coordinator, Bridget Sprovieri,[1] who had oversight over disability matters at the Santiago School. Unlike *Sweeny,* Plaintiff did not just report to the wrongdoer Sweazy. She *exposed* the wrongdoing and made reports to those delegated with oversight at Acero. *See also Runge v. Bd. of Educ. for Comm. Unit Sch. Dist. No. 300,* 2019 IL App (2d) 180190-U (relying on *Brame* and reversing trial court holding that special education teacher had made a valid IWA disclosure when she reported special education violations not just to principal but to an assistant superintendent who had oversight over

---

[1] According to Acero's website: "Any person who believes he/she has been subjected to discrimination on the basis of disability, or witnesses alleged discrimination on the basis of disability, may file a grievance under this procedure. Retaliation against a person who files a complaint of discrimination on the basis of disability pursuant to the grievance procedure, or persons who participate in related proceedings, is prohibited. Acero will take all necessary actions to stop disability discrimination, remedy its effects, and prevent its recurrence. The following individual is Acero Schools' Section 504/Title II Coordinator: Bridgette Sprovieri."
(https://www.aceroschools.org/apps/pages/index.jsp?uREC_ID=816720&type=d&pREC_ID=1201746, May 23, 2019).

elementary education and the district's chief legal counsel). Under the applicable law, Plaintiff has made a disclosure under the IWA and her Section 15(b) claims should proceed to discovery.

### 2. Plaintiff has sufficiently alleged a violation of Section 20 of the IWA

To state a valid cause of action under Section 20 of the IWA, a plaintiff has to allege that (1) she refused to participate in an activity that would result in a violation of a state or federal law, rule or regulation and (2) her employer retaliated against her because of the refusal. 740 ILCS 174/20. Here, Defendants argue that Plaintiff did not specifically allege any law or regulation that Defendants asked her to violate. That argument is flawed.

Plaintiff clearly stated in her Complaint the legal and regulatory framework that Defendants' were obligated to follow, but requested Plaintiff to disregard. *See* Cmplt. ¶ 21-22; 25. Plaintiff specifically alleges that she refused to provide unlawful intervention after being repeatedly requested to do so and she refused to disregard legally mandated IEP eligibility criteria despite being pressured to do so by Defendants. Cmplt. ¶¶ 35; 41. The facts alleged in the Complaint are more than enough to put the Defendants on notice about the nature of Plaintiff's' complaint, all that is required at this stage. *Swierkiewicz,* 534 U.S. at 510.

Defendants' own cited authority supports that Plaintiff has sufficiently pled her allegations. In *Young v. Alden Gardens of Waterford, LLC*, the defendant argued that the plaintiff's failure to state a specific law or regulation under Section 20 of the Act doomed their cause of action. 30 N.E.3d 631, 643 (Ill. App. Ct. 2015). The court found this argument unpersuasive, holding that even if the plaintiff cited the wrong law, she provided enough evidence to prove that the defendants' request would violate several state regulations which was sufficient. *Id.*, at 643-44. This Court should come to the same conclusion and deny Defendant's attempt to strike Plaintiff's well-plead Whistleblower Act Claims.

**E.      Plaintiff Properly Alleged that Her Termination was Retaliatory under Illinois Law**

Without any legal or factual support, Defendants state the Plaintiff has not alleged that she "blew the whistle" on Acero. *See* Def. Mot. To Dismiss, p. 14-15. This conclusory argument wholly ignores the allegations in the Complaint which set forth with the required specificity how Plaintiff "blew the whistle" on Defendants' illegal and improper special education practices. In attempting to dismiss Plaintiff's common law claims, Defendants defer to its argument under Section 15 of the IWA; however, these are legally distinct claims. *See Stiles v. Int'l BioResources, LLC,* 726 F.Supp.2d 944, 951-53 (N.D. Ill. 2010).

To properly bring a common law retaliatory discharge claim, an employee must allege that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities and (3) the discharge violates a clear mandate of public policy. *Turner v. Mem'l Med. Ctr.,* 911 N.E.2d 369 (Ill. 2009). Illinois courts require that the public policy element be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law. *Palmateer v. In't Harvester Co.,* 421 N.E.2d 876, 878 (1981). Once the statutory provision are cited, the test is then whether the public policy clearly mandated by the cited provisions was violated by the plaintiff's discharge. *Barr v. Kelso-Burnett Co.,* 106 Ill.2d 520, 527 (1985). Here, Plaintiff sites to specific legal and regulatory framework which mandates that certain special education interventions and diagnostics be provided in public schools. *See* Compt. ¶21-22; 25. Plaintiff's common law retaliation claim is predicated on the proposition that Illinois has a clearly mandated public policy that teachers not be retaliated against when they report special educations practices that do not comply with state or federal law. Illinois has in interest in making sure its students receive the educational interventions its legislature, and the federal legislature, have prescribed.

14

*Corral v. UNO Charter Sch. Network Inc.* is informative with regard to Plaintiff's current claim invoking a clear public policy mandate. In *Corral,* a teacher made internal reports of child abuse and was then terminated. 2013 WL 1855824, *13 (N.D. Ill. 2013). The teacher alleged his termination was in retaliation for his reports of child abuse and cited the statutory requirement for such report under the Illinois Abused and Neglected Child Reporting Act. *Id.* At summary judgment, the court held that the teacher sufficiently established a common law retaliation claim because if a teacher was fired for reporting abuse, this would contravene a clearly mandated public policy in that the school would be discouraging teachers with knowledge of abuse from coming forward for fear of retaliation. *Id.* at 14. Certainly, Illinois has a similar, clearly mandated public policy in protecting teachers who 'blow the whistle' when legally mandated special education interventions and diagnostics are not being provided. Teachers should not fear retaliation when they report special education mandates which are not being followed.

Here, Plaintiff believed, in good faith, that the Defendants were acting unlawfully in failing to provide certain special education interventions and diagnostics and deviating from IEP eligibility criteria and Plaintiff reported such unlawful behavior. Cmplt. ¶ 21-22; 25; 41. As shown in *Corral,* violations of the statutes cited by Plaintiff implicate a clear public policy mandate and, as such, Plaintiff has adequately alleged a common law retaliation claim under Illinois law. Defendants' efforts to dismiss Plaintiff's common law retaliation claim should be denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be properly denied and this matter should proceed to discovery and to an adjudication on the facts.

        Respectfully Submitted,

        <u>s/Meredith W. Buckley</u>
        Meredith W. Buckley

Meredith W. Buckley
MALKINSON & HALPERN, P.C.
33 N. Dearborn St., Suite 1540
Chicago, Illinois 60602
(312) 427-9600
mbuckley@mhtriallaw.com